CHAMBERS OF
**STEPHANIE A. GALLAGHER**
**UNITED STATES MAGISTRATE JUDGE**

**101 WEST LOMBARD STREET**
**BALTIMORE, MARYLAND 21201**
**(410) 962-7780**
Fax (410) 962-1812

January 16, 2018

LETTER TO COUNSEL

> RE:   *Danielle T. Vinson v. Commissioner, Social Security Administration*
>         Civil No. SAG-17-785

Dear Counsel:

On March 22, 2017, Plaintiff Danielle T. Vinson petitioned this Court to review the Social Security Administration's final decision to deny her claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). [ECF No. 1]. I have considered the parties' cross-motions for summary judgment [ECF Nos. 15, 18], and I find that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2016). This Court must uphold the decision of the Agency if it is supported by substantial evidence and if the Agency employed proper legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, I will deny both motions, reverse the Commissioner's decision, and remand the case to the Commissioner for further consideration. This letter explains my rationale.

Ms. Vinson filed her claims for DIB and SSI on May 18, 2013, alleging a disability onset date of February 1, 2011. (Tr. 244-56). Her claims were denied initially and on reconsideration. (Tr. 171-78, 184-87). A hearing was held on December 2, 2015, before an Administrative Law Judge ("ALJ"). (Tr. 63-120). Following the hearing, the ALJ determined that Ms. Vinson was not disabled within the meaning of the Social Security Act during the relevant time frame. (Tr. 43-62). The Appeals Council denied Ms. Vinson's request for review, (Tr. 1-7), so the ALJ's 2016 decision constitutes the final, reviewable decision of the Agency.

The ALJ found that Ms. Vinson suffered from the severe impairments of "COPD; obesity; degenerative disc disease; imperforate anus (resulting in colostomy bag); sacral agenesis; sleep apnea; ulnar neuropathy and CTS (left hand); [and] depression." (Tr. 49). Despite these impairments, the ALJ determined that Ms. Vinson retained the residual functional capacity ("RFC"):

> to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except [she] can do work that occasionally requires kneeling, crouching and crawling, and frequently requires balancing, stooping, and climbing (except never requires the use of ladders, ropes, and scaffolds). She can perform jobs that allow frequent exposure to extreme cold, extreme heat, humidity, vibration, and occasional exposure to irritants such as fumes, odors, dust, gases, and poorly ventilated areas. She can perform jobs that allow frequent handling and fingering with her left hand. Because of her mental impairments, she can perform jobs consisting of

unskilled, routine, and repetitive tasks; time off task during workday can be accommodated by normal breaks.

(Tr. 51). After considering the testimony of a vocational expert ("VE"), the ALJ determined that Ms. Vinson could perform jobs existing in significant numbers in the national economy, and that, therefore, she was not disabled. (Tr. 55-56).

Ms. Vinson raises four arguments on appeal, specifically that the ALJ erroneously: (1) assessed her credibility; (2) failed to give controlling weight to the opinions of her treating physician; (3) assessed her RFC in violation of *Mascio v. Colvin*, 780 F.3d 632 (4th Cir. 2015); and (4) evaluated the effects of her obesity. [ECF No. 15-1]. Each argument is addressed below.

## I.      The ALJ's Credibility Finding

Ms. Vinson argues that the ALJ erred in concluding that her allegations regarding the intensity and limiting effects of her symptoms were "not entirely credible." (Tr. 51-52); [ECF No. 15-1 at 14-15]. In this Circuit, it is well-established that an ALJ must follow a two-step process for assessing a claimant's assertions about her impairments and symptoms. *Craig*, 76 F.3d at 594–96. First, the ALJ must determine whether there is objective evidence showing the existence of a medical impairment that reasonably could be expected to cause the alleged pain. *Id.* at 594 (citing 20 C.F.R. §§ 416.929(b), 404.1529(b)). Second, the ALJ must evaluate the "intensity and persistence of the claimant's pain, and the extent to which it affects the claimant's ability to work." *Id.* at 595. To determine the credibility of the individual's statements, the ALJ "must consider the entire case record, including the objective medical evidence, the individual's own statements about symptoms, statements and other information provided by treating or examining physicians . . . and any other relevant evidence in the case record." SSR 96-7p, 1996 WL 374186, at *1 (S.S.A. July 2, 1996). Importantly, an ALJ must "articulate which of a claimant's individual statements are credible, rather than whether the claimant is credible as a general matter." *Bostrom v. Colvin*, 134 F. Supp. 3d 952, 960 (D. Md. 2015) (quoting *Armani v. Comm'r, Soc. Sec. Admin.*, No. JMC-14-CV-976, 2015 WL 2062183, at *1 (D. Md. May 1, 2015)). Here, the ALJ concluded that Ms. Vinson's "medically determinable impairments could reasonably be expected to cause the alleged symptoms[,]" but that her "statements concerning the intensity, persistence, and limiting effects of the symptoms [were] not entirely credible." (Tr. 51-52). Ms. Vinson contends that the ALJ erred in the second prong of the two-part test, because he failed to "explain which of [her alleged] symptoms that he found to be inconsistent with the evidence in the record (or not credible) and how the evaluation of the symptoms led to that conclusion." [ECF No. 15-1 at 15].

I agree that the ALJ erred in finding that Ms. Vinson was "not entirely credible." (Tr. 51-52). Here, the ALJ failed to address the veracity of Ms. Vinson's complaints of "constant and chronic back pain," which allegedly caused a "limited ability to stand and walk." (Tr. 51-55). Instead, in discounting Ms. Vinson's credibility and allegations regarding the intensity and limiting effects of her symptoms, the ALJ relied only on objective medical evidence. The ALJ cited several medical records which demonstrated that Ms. Vinson: (1) "was alert and oriented,

with appropriate thought content[;]" (2) "displayed normal musculoskeletal range of motion without edema[;]" (3) "exhibited good strength in the lower extremities bilaterally and [] moved all extremities well[;]" and (4) "exhibited normal cognitive skill, insight, orientation, memory, and thought content." (Tr. 52-53). Because, however, Ms. Vinson's individual allegations of chronic back pain are material to the "intensity and persistence of [her] pain, and the extent to which it affects [her] ability to work," the ALJ erred in completely failing to analyze the veracity of these allegations. *See Bostrom*, 134 F. Supp. at 960 (stating that an ALJ must "articulate which of a claimant's individual statements are credible, rather than whether the claimant is credible as a general matter.") (quoting *Armani*, No. JMC-14-CV-976, 2015 WL 2062183, at *1); *Mascio*, 780 F.3d at 640 ("Nowhere, however, does the ALJ explain how he decided which of [the claimant's] statements to believe and which to discredit, other than the vague (and circular) boilerplate statement that he did not believe any claims of limitations beyond what he found when considering [the claimant's] residual functional capacity."); *Lewis v. Berryhill*, 858 F.3d 858, 866 (4th Cir. 2017) (holding that an ALJ cannot rely exclusively on objective evidence to undermine a claimant's subjective assertions of disabling pain).

On remand, in evaluating Ms. Vinson's credibility, the ALJ should look beyond the objective medical evidence and also consider her subjective complaints, including those of "chronic and constant back pain." In remanding the case for additional explanation, I express no opinion as to whether the ALJ's ultimate conclusion that Ms. Vinson is not entitled to benefits is correct.

II.     **Opinions of Ms. Vinson's Treating Physician**

Ms. Vinson next argues that the ALJ failed to give proper weight to the opinion of her treating physician, Dr. Beth Barnet. [ECF No. 15-1 at 13-14]. A treating physician's opinion is given controlling weight when two conditions are met: (1) it is well-supported by medically acceptable clinical laboratory diagnostic techniques; and (2) it is consistent with other substantial evidence in the record. *See Craig*, 76 F.3d at 590 (citation omitted); *see also* 20 C.F.R. § 404.1527(d)(2). However, where a treating source's opinion is not supported by clinical evidence or is inconsistent with other substantial evidence, it should be accorded significantly less weight. *Craig*, 76 F.3d at 590. If the ALJ does not give a treating source's opinion controlling weight, the ALJ will assign weight after applying several factors, such as the length and nature of the treatment relationship, the degree to which the opinion is supported by the record as a whole, and any other factors that support or contradict the opinion. 20 C.F.R. §§ 404.1527(c)(1)-(6).

Here, I agree that the ALJ erred in "accord[ing] little weight to [Dr. Barnet's] September 2013 and May 2014 [RFC] Assessments," that Ms. Vinson could "occasionally lift less than ten pounds." (Tr. 54, 629, 635). In reaching her RFC conclusions, the medical records demonstrate that Dr. Barnet took into consideration Ms. Vinson's subjective complaints of chronic back pain. (Tr. 623, 626, 632) (identifying Ms. Vinson's symptoms as including "back pain" and "shooting low back pain"). Thus, it is evident that Ms. Vinson's subjective complaints impacted Dr. Barnet's subsequent RFC assessments. Because, as addressed above, the ALJ failed to consider

Ms. Vinson's subjective allegations of back pain, remand is also necessary to determine if the ALJ's consideration of Ms. Vinson's subjective complaints of back pain impacts his analysis of the weight to accord Dr. Barnet's opinions.

### III. Mascio Issue

Ms. Vinson argues that the ALJ erred by failing to include her moderate limitations with regard to concentration, persistence, or pace in the RFC assessment, in violation of *Mascio v. Colvin*, 780 F.3d 632 (4th Cir. 2015). [ECF No. 15-1 at 12]. In *Mascio*, the United States Court of Appeals for the Fourth Circuit determined that remand was appropriate for three distinct reasons, including, as pertinent to this case, the inadequacy of the ALJ's evaluation of "moderate difficulties" in concentration, persistence, or pace. 780 F.3d at 638. At step three of the sequential evaluation, the ALJ determines whether a claimant's impairments meet or medically equal any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. Listings 12.00 *et. seq.*, pertain to mental impairments. 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00. The relevant listings therein consist of: (1) a brief statement describing a subject disorder; (2) "paragraph A criteria," which consists of a set of medical findings; and (3) "paragraph B criteria," which consists of a set of impairment-related functional limitations. *Id.* § 12.00(A). If both the paragraph A criteria and the paragraph B criteria are satisfied, the ALJ will determine that the claimant meets the listed impairment. *Id.*

Paragraph B consists of four broad functional areas: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation. The ALJ employs the "special technique" to rate a claimant's degree of limitation in each area, based on the extent to which the claimant's impairment "interferes with [the claimant's] ability to function independently, appropriately, effectively, and on a sustained basis." 20 C.F.R. § 404.1520a(c)(2). The ALJ uses a five-point scale to rate a claimant's degree of limitation in the first three areas: none, mild, moderate, marked, or extreme. *Id.* § 404.1520a(c)(4). In order to satisfy paragraph B, a claimant must exhibit either "marked" limitations in two of the first three areas, or "marked" limitation in one of the first three areas with repeated episodes of decompensation. *See, e.g.*, 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.02. Marked limitations "may arise when several activities or functions are impaired, or even when only one is impaired, as long as the degree of limitation is such as to interfere seriously with [the claimant's] ability to function." *Id.* § 12.00(C).

The functional area of "concentration, persistence, or pace refers to the ability to sustain focused attention and concentration sufficiently long to permit the timely and appropriate completion of tasks commonly found in work settings." *Id.* at § 12.00(C)(3). Social Security regulations do not define limitations in concentration, persistence, or pace "by a specific number of tasks that [a claimant is] unable to complete." *Id.* Further, the regulations offer little guidance on the meaning of "moderate" limitations.

The Fourth Circuit remanded *Mascio* because the hypothetical the ALJ posed to the VE – and the corresponding RFC assessment – did not include any mental limitations other than

unskilled work, despite the fact that, at step three of the sequential evaluation, the ALJ determined that the claimant had moderate difficulties in maintaining concentration, persistence, or pace. 780 F.3d at 637-38. The Fourth Circuit specifically held that it "agree[s] with other circuits that an ALJ does not account for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work." *Id*. at 638 (quoting *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2011)) (internal quotation marks omitted). In so holding, the Fourth Circuit emphasized the distinction between the ability to perform simple tasks and the ability to stay on task, stating that "[o]nly the latter limitation would account for a claimant's limitation in concentration, persistence, or pace." *Id*. Although the Fourth Circuit noted that the ALJ's error might have been cured by an explanation as to why the claimant's moderate difficulties in concentration, persistence, or pace did not translate into a limitation in the claimant's RFC, it held that absent such an explanation, remand was necessary. *Id*.

In this case, the ALJ concluded at step three of the sequential process that Ms. Vinson had "moderate difficulties" with respect to concentration, persistence, or pace. (Tr. 50). The ALJ noted that Ms. Vinson reported: (1) having a short attention span; (2) having problems with written and spoken instructions; and (3) that her mind wanders. Referencing the findings of her State Agency mental assessment, the ALJ also determined that Ms. Vinson has the "capacity to understand and retain simple (and some complex) instructions, and is able to complete simple tasks at an appropriate pace and is able to sustain this level across days and weeks." (Tr. 54). The ALJ then found that Ms. Vinson had "the [RFC] to perform light work . . . [and] [b]ecause of her mental impairments, [] can perform jobs consisting of unskilled, routine, and repetitive tasks; time off task during workday can be accommodated by normal breaks." (Tr. 51).

According to 20 C.F.R. § 404.1520a(c)(2), the rating of "moderate difficulties" is supposed to represent the result of application of the following technique:

> We will rate the degree of your functional limitation based on the extent to which your impairment(s) interferes with your ability to function independently, appropriately, effectively, and on a sustained basis. Thus, we will consider such factors as the quality and level of your overall functional performance, any episodic limitations, the amount of supervision or assistance you require, and the settings in which you are able to function.

20 C.F.R. § 404.1520a(c)(2). Once the technique has been applied, the ALJ is supposed to include the results in the opinion as follows:

> At the administrative law judge hearing and Appeals Council levels, the written decision must incorporate the pertinent findings and conclusions based on the technique. The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The

> decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.

*Id.* § 404.1520a(e)(4). The cursory analysis provided by the ALJ in Ms. Vinson's case fails to fulfill these requirements. Without further explanation, I am unable to ascertain whether the ALJ truly believed Ms. Vinson to have moderate difficulties in concentration, persistence, and pace, instead of mild or no difficulties, and how those difficulties restrict her RFC to "unskilled, routine, and repetitive tasks" with time off task during the workday to be "accommodated by normal breaks." (Tr. 51). In sum, this analysis insufficiently addresses Ms. Vinson's pace or ability to sustain work over an eight-hour workday. In light of this inadequacy, I must remand the case to the Commissioner for further analysis consistent with the Fourth Circuit's mandate in *Mascio*. On remand, the ALJ should consider the appropriate level of limitation in the area of concentration, persistence, or pace, and, if the ALJ finds moderate limitation again, should explain his finding to permit an adequate evaluation under the dictates of *Mascio*.

### IV.    The ALJ's Consideration of Ms. Vinson's Obesity

Finally, Ms. Vinson argues that the ALJ erroneously evaluated the severity of her obesity by failing to make any findings regarding its impacts on her physical limitations. [ECF 15-1 at 16-17]. Specifically, Ms. Vinson alleges that that ALJ failed to adequately explain her obesity's effects on her degenerative disc disease and congenital back problems, and instead provided an insufficient blanket assertion that he found "no objective evidence, which states that obesity has directly affected the [RFC] . . . below the level found." *Id.* at 17. I disagree. Ms. Vinson has not cited, and I have not found, any evidence of record suggesting that Ms. Vinson's obesity adversely affected her functioning. The claimant carries the burden of showing how her obesity affected her ability to perform work-related functions. *See Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995) (finding that the applicant bears the burden of production and of proof during the first four steps of the inquiry). Because Ms. Vinson has not identified how her obesity limited her to a greater extent than the ALJ found, she has failed to carry her burden. *See Brown v. Astrue*, No. JKS-09-1792, 2011 WL 129006, at *2 (D. Md. Jan. 14, 2011) ("having identified no evidence to suggest that his obesity caused greater limitations than the ALJ assigned, Brown has shown no basis for remand.").

### V.    Conclusion

For the reasons set forth above, Ms. Vinson's Motion for Summary Judgment [ECF No. 15] is DENIED and Defendant's Motion for Summary Judgment [ECF No. 18] is DENIED. Pursuant to sentence four of 42 U.S.C. § 405(g), the Commissioner's judgment is REVERSED IN PART due to inadequate analysis. The case is REMANDED for further proceedings in accordance with this opinion. The Clerk is directed to CLOSE this case.

Despite the informal nature of this letter, it should be flagged as an opinion and docketed as an order.

Sincerely yours,

/s/

Stephanie A. Gallagher
United States Magistrate Judge